IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL L. NEELEY, <br><br> Plaintiff, <br><br> v. <br><br> DR. MARGARET CARRILLO, et al., <br><br> Defendants. | CIVIL ACTION <br> NO. 14-0542 |

**OPINION**

**Slomsky, J.**                                                                                     **June 16, 2014**

## I.     INTRODUCTION

On January 29, 2014, Michael L. Neeley ("Plaintiff") filed a pro se civil rights Complaint against Dr. Margaret Carrillo, Angie Napolitano, and PrimeCare Medical, Inc. (collectively "Defendants"), alleging violations of 42 U.S.C. § 1983 (commonly referred to as "Section 1983"). Plaintiff is currently incarcerated at the Montgomery County Correctional Facility ("MCCF"). He asserts that Defendants violated his constitutional rights by failing to adequately treat his various medical conditions. On March 21, 2014, Defendants filed a Motion to Dismiss the Complaint. (Doc. No. 9.) On March 31, 2014, Plaintiff filed his Response in opposition. (Doc. No. 10.) The Motion is now ripe for disposition.[1]

## II.    BACKGROUND

The following facts are taken from the Complaint and must be accepted as true for purposes of the Motion to Dismiss. Over the past few years, Plaintiff has been incarcerated off-and-on at MCCF. During his incarceration, Plaintiff was diagnosed with Rheumatoid Arthritis

---

[1] In reaching its decision, the Court has considered the following: the Complaint (Doc. No. 3); Defendants' Motion to Dismiss (Doc. No. 9); and Plaintiff's Response in opposition (Doc. No. 10).

("RA"). (Doc. No. 3 at 9.) He also suffers from a liver disease, Hepatitis C. (Id. at 10.) After several different medications failed to treat Plaintiff's RA, a private specialist recommended that he take a medication called Enbrel. (Id. at 9.) Dr. Margaret Carrillo provides medical care for inmates at MCCF, and she wrote an Enbrel prescription for Plaintiff. (Id.) The medication seemed to improve Plaintiff's RA. (Id.)

Sometime after January 2011, Plaintiff was discharged from MCCF. (Id.) With Dr. Carrillo's assistance, Plaintiff successfully enrolled in a program that allowed him to obtain Enbrel free of cost. (Id.) After a brief period "on the streets," Plaintiff returned to MCCF at some point in 2012. (Id.) During this period of incarceration, Plaintiff was once again under the care of Dr. Carrillo. (Id.) At this time, a new healthcare company had assumed responsibility for providing medical services to inmates at MCCF: PrimeCare Medical, Inc. ("PrimeCare"). Plaintiff was subsequently released on parole. (Id.)

On September 20, 2013, Plaintiff again returned to MCCF. (Id.) Since then, he has not been able to see Dr. Carrillo. (Id.) Instead, Plaintiff sees Angie Napolitano[2] for his medical treatment. She has been prescribing him pain medication. (Id.) According to Plaintiff, these pain medications only address the side effects of RA, and he is not being treated for the RA itself. (Id.) Plaintiff alleges that several different PrimeCare employees told him that PrimeCare will not approve Enbrel due to its cost. (Id.) Plaintiff has not been able to obtain a prescription for Enbrel since he last returned to MCCF.

Plaintiff alleges that his condition has deteriorated significantly since he was last seen by Dr. Carrillo. (Id. at 10.) Daily activities such as showering, dressing, eating, and dental hygiene have become very difficult for Plaintiff to complete. (Id.) Plaintiff experiences swelling in his

---

[2] According to Defendants, Angie Napolitano is a Physician Assistant at MCCF. (Doc. No. 9-1 at 1.)

hands, elbows, fingers, shoulders, and jaw. (Id.)  Due to the pain associated with RA, Plaintiff cannot participate in gym or weight room activities, and he tends to stay in bed all day. (Id.) Plaintiff talked to a P.A.[3] who told him that Dr. Carrillo will not prescribe him Enbrel because of his Hepatitis C. (Id.)  Plaintiff requested treatment for his liver condition but was told that MCCF will not treat Hepatitis C. (Id.)  Plaintiff believes that Dr. Carrillo is making up excuses not to prescribe Enbrel to him. (Id.)  Plaintiff continues to be seen by the medical staff at MCCF for his symptoms, but he contends that nothing is being done to treat the underlying conditions. (Id.)

On January 29, 2014, Plaintiff filed a pro se civil rights Complaint against Defendants, alleging that they violated his civil rights by failing to treat his RA and Hepatitis C. (Doc. No. 3.)  Defendants filed a Motion to Dismiss the Complaint on March 21, 2014. (Doc. No. 9.)  On March 31, 2014, Plaintiff filed his Response in opposition. (Doc. No. 10.)  For reasons that follow, Defendants' Motion will be denied.

### III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads

---

[3] The Court assumes that P.A. stands for Physician Assistant.  Plaintiff does not know the name of this individual.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

Plaintiff's federal claim against Defendants is based on 42 U.S.C. § 1983. "To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law,

4

deprived [plaintiff] of a right secured by the Constitution or the laws of the United States." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (quoting Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). Thus, "[t]he first step in evaluating a [S]ection 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Id. (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)). Here, Plaintiff is proceeding pro se, and he does not specifically identify an underlying constitutional right that Defendants allegedly violated. However, Defendants have construed Plaintiff's civil rights claim to be based on a purported violation of the Eighth Amendment. Given Plaintiff's status as an inmate at MCCF and the substance of his allegations, this is an appropriate interpretation of the claim, which the Court will adopt.

"The Eighth Amendment prohibits 'cruel and unusual punishments.' The amendment proscribes punishments that 'involve the unnecessary and wanton infliction of pain.'" Byrd v. Shannon, 715 F.3d 117, 127 (3d Cir. 2013) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). A plaintiff's "mere disagreement as to the proper medical treatment" is insufficient to establish an Eighth Amendment violation. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)). Furthermore:

> If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness.

White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

However, prison officials' "[d]eliberate indifference to a prisoner's serious medical needs constitutes an unnecessary and wanton infliction of pain[,]" in violation of the Eighth

5

Amendment.  Byrd, 715 F.3d at 127 (citation omitted).  The test for an Eighth Amendment violation under a theory of "deliberate indifference" is two-pronged.  Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).  First, "[i]t requires deliberate indifference on the part of prison officials," and second, "it requires the prisoner's medical needs to be serious."  Id. (quoting West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978)).

Under the first prong, Plaintiff can demonstrate deliberate indifference by showing that Defendants' actions were subjectively reckless.  Farmer v. Brennan, 511 U.S. 825, 839 (1994).  The Supreme Court has explained this standard as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837.  Under the second prong, "[a] medical need is 'serious' . . . if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"  Monmouth Cnty., 834 F.2d at 347 (quotation omitted).

    **A.**    **Plaintiff Alleges a Plausible Section 1983 Claim Against Dr. Carrillo and Angie Napolitano**

In their Motion to Dismiss, Defendants contend that the Complaint should be dismissed because Plaintiff has failed to demonstrate Defendants' deliberate indifference to a serious medical condition.  (Doc. No. 9-1 at 4.)  The Court does not agree.

Plaintiff claims that he suffers from RA and Hepatitis C.  He alleges that daily activities such as showering, dressing, eating, and dental hygiene have become very difficult for him to complete.  (Doc. No. 3 at 10.)  He experiences a great deal of pain, causing him to remain in bed most of the day and refrain from participating in gym or weight room activities.  (Id.)  According

6

to Plaintiff, the swelling in his hands, elbows, fingers, shoulders, and jaw is so extreme that "anybody in there [sic] right mind knows there is a problem that needs to be addressed." (Id.) At this stage of the litigation, Plaintiff has alleged enough facts which make it plausible that he has serious medical needs. Medical professionals have diagnosed Plaintiff as requiring treatment, and the swelling in his joints is "so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty., 834 F.2d at 347 (quotation omitted). Thus, at this stage of the litigation, Plaintiff has set forth enough facts to satisfy the second prong of an Eighth Amendment violation. The closer question is whether Plaintiff has alleged facts which plausibly demonstrate that Defendants were deliberately indifferent to his serious medical needs.

With respect to his RA, Plaintiff admits that he is being seen by medical personnel at MCCF. (Doc. No. 3 at 10.) However, he avers that he is being treated for the side effects of RA, rather than the condition itself. (Id.) Previously, a private specialist recommended that Plaintiff take Enbrel, and at one point in time, Dr. Carrillo prescribed this medication to him. (Id. at 9, 10.) According to Plaintiff, Dr. Carrillo is no longer prescribing him Enbrel due to his liver condition.[4] (Id. at 10.) Throughout his Complaint, Plaintiff makes it abundantly clear that he believes he should be given Enbrel to treat his RA. However, Plaintiff's mere disagreement as to the proper medical treatment of his condition is insufficient to establish an Eighth Amendment violation. Spruill, 372 F.3d at 235. In addition, there is no violation simply because Dr. Carrillo disagrees with the specialist's recommendation regarding medication. As the Third Circuit has noted, there may be more than one acceptable way to treat a plaintiff's illness. White, 897 F.2d at 110. In Plaintiff's case, Angie Napolitano has been prescribing him pain medication for the

---

[4] He also contends that he is being denied this medication because it is costly.

RA.  (Doc. No. 3 at 9.)  While Plaintiff may disagree with this course of treatment, he has failed to demonstrate that Defendants are deliberately indifferent to his RA.  At best, he alleges a difference of opinion with respect to proper medical treatment, not deliberate indifference.

However, Plaintiff also suffers from Hepatitis C and claims that Defendants have failed to treat this illness entirely.  According to Plaintiff:  "I suggested treatment for the liver disease and was told that this facility will not treat Hep. C.  Now I am not being treated for two conditions, Rheumatoid Arthritis and Hep. C."  (Id. at 10.)  Accepted as true, Plaintiff's allegations are sufficient to satisfy the first prong of an Eighth Amendment violation.[5]  Defendants know that Plaintiff suffers from Hepatitis C and they have taken no action to treat this illness, disregarding a serious risk to Plaintiff's health.  At this stage in the litigation, Plaintiff has alleged enough facts which make it plausible that Defendants were deliberately indifferent to a serious medical need, in violation of the Eighth Amendment.

### B. Plaintiff Alleges a Plausible Section 1983 Claim Against PrimeCare

Next, Defendants argue that Plaintiff's Section 1983 claim against PrimeCare should be dismissed because it is improperly based on a theory of vicarious liability.  (Doc. No. 9 at 5.)  It is well-established that an entity like PrimeCare "cannot be liable under a theory of respondeat superior or vicarious liability" for an Eighth Amendment violation under Section 1983.  A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 580 (3d Cir. 2004) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691-92 (1978)).  In order for PrimeCare to be liable, Plaintiff "must identify a policy or custom . . . that caused the constitutional

---

[5] In his Response to Defendants' Motion to Dismiss, Plaintiff reiterated these allegations.  According to Plaintiff, "[n]othing is, has, or was done to treat the Hepatitis C."  (Doc. No. 10 at ¶ 11.)  "My hepatitis C has totally been ignored, receiving no treatment what so ever [sic]."  (Id. at ¶ 13.)

violation." Id. (citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997)). According to the Third Circuit:

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."

Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotations omitted).

In the Complaint, Plaintiff contends that PrimeCare will not approve Enbrel because of the cost of the medication. (Doc. No. 3 at 9.) As already discussed, Plaintiff cannot establish an Eighth Amendment violation based on a difference of opinion regarding the proper medical treatment of his RA. While he is not receiving the specific medication he desires, Enbrel, Plaintiff is nevertheless being treated for this condition. He admits receiving this treatment in the Complaint.[6] Therefore, there can be no violation based on Plaintiff's RA treatment.

However, with respect to his Hepatitis C, Plaintiff alleges that a PrimeCare Physician Assistant told him that "this facility will not treat Hep. C." (Id. at 10.) Plaintiff is proceeding pro se, and the Court must resolve all reasonable inferences in his favor at the motion to dismiss stage. This statement by a PrimeCare employee suggests that PrimeCare has a policy or custom of not treating inmates for Hepatitis C. Therefore, Plaintiff's Section 1983 claim against PrimeCare will not be dismissed at this time.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be denied. While Plaintiff cannot maintain an Eighth Amendment violation based on Defendants' treatment of his RA, his claim may nevertheless proceed based on Defendants' alleged failure to treat his Hepatitis C.

---

[6] In the Complaint, Plaintiff states: "I am being seen by medical . . . ." (Doc. No. 3 at 10.)